LEVY DAVIS & MAHER, LLP
Jonathan A. Bernstein (JB 4053)
Attorneys for Plaintiff
39 Broadway, Suite 1620
New York, New York 10006
(212) 371-0033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JIAN WANG a/k/a JAMES WANG, : | |
| : | 11 Civ. 2992 (JFM) (GAY) |
| Plaintiff, : | |
| : | |
| - against - : | **COMPLAINT AND** |
| : | **DEMAND FOR JURY TRIAL** |
| INTERNATIONAL BUSINESS MACHINES : | |
| CORP., : | |
| : | |
| Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Jian Wang a/k/a James Wang (hereinafter "Wang"), by his attorneys, Levy Davis & Maher, LLP, complaining of defendant International Business Machines Corp. (hereinafter "IBM"), alleges:

### NATURE OF THE ACTION

1. This is an action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("Title I" or "ADA") and the New York State Human Rights Law , N.Y. Exec. L. §§ 296 *et seq.* ("NYCHRL") to correct unlawful employment practices. Plaintiff, a computer software engineer and employee of defendant, was terminated incident to a reduction in force. Mr. Wang, who is deaf, holds degrees in computer programming. His job performance was satisfactory. The process by which IBM selected Mr. Wang for layoff required defendant to circumvent its own established procedures in order to create an ostensibly plausible justification

for a decision tainted by discriminatory animus.

2. Defendant's actions were unlawful, and plaintiff brings this action for injunctive and declaratory relief, lost earnings, compensatory damages, punitive damages, attorneys' fees, and other appropriate equitable and legal relief.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, and 28 U.S.C. § 1367(a), in that the state and federal claims arise from a common nucleus of operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as the defendant has offices, conducts business and can be found in the Southern District of New York, and the causes of action arose and occurred in the Southern District of New York.

## PARTIES

5. Plaintiff James Wang is a natural person who resides in the hamlet of Highland, County of Ulster, State of New York. At all relevant times, he was employed by defendant as a software engineer, until the termination of his employment on or about February 26, 2009.

6. At all relevant times, Mr. Wang has been substantially limited with respect to the major life activity of hearing, and therefore has been a "qualified individual with a disability"

within the meaning of 42 U.S.C. § 12111(8).

7. At all relevant times, Wang was and still is able to perform the essential functions of his position, with or without reasonable accommodation, and therefore has been a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8) and/or has been "regarded as" such within the meaning of 42 U.S.C. § 12102(2)(C) and/or has a "record of a disability" within the meaning of 42 U.S.C. § 12102(2)(B).

8. Upon information and belief, IBM is and has been, at all relevant times, a domestic business corporation duly organized under the laws of the State of New York that maintains its principal place of business in the hamlet of Armonk, Town of New Castle, County of Westchester, State of New York. At all relevant times, defendant was and is an "employer" within the meaning of the ADA.

## PROCEDURAL REQUIREMENTS

9. Plaintiff incorporates by reference Paragraphs 1 through 8 of this Complaint as though the same were set forth fully herein.

10. Mr. Wang timely filed a Verified Complaint on or about April 24, 2009 with the New York State Division of Human Rights ("SDHR"). Pursuant to the work-sharing agreement between the SDHR and the United States Equal Employment Opportunity Commission ("EEOC"), the SDHR filing operates as a filing with the EEOC.

11. On or about November 24, 2010, the SDHR dismissed the Complaint and referred it to the EEOC for review. On or about February 7, 2011, the EEOC issued Mr. Wang a Notice of Right to Sue.

**STATEMENT OF THE CLAIMS**

12.     Plaintiff incorporates by reference Paragraphs 1 through 11 of this Complaint as though the same were set forth fully herein.

13.     IBM first employed Mr. Wang through its Co-operative Student Employment Program in or about April 2003. Defendant assigned Mr. Wang to perform Lotus Notes Development duties in the Tools Department at its Poughkeepsie, New York facility.

14.     Mr. Wang received an above average evaluation for his work as a student. IBM issued him a student performance evaluation noting that his communication was acceptable and that "[h]e is very clear in reporting status to his customer and his manager."

15.     IBM hired Mr. Wang on or about January 1, 2005 as a full-time permanent employee.

16.     Mr. Wang's principal job duty was the creation and improvement of computer software code, alone and in collaboration with others.

17.     Mr. Wang is fluent in four languages: American Sign Language, Chinese Sign Language, Chinese and English. He communicated with supervisors, co-workers and customers (*i.e.*, IBM employees outside the Tools Department) as necessary or desirable in a variety of ways, including by commonplace computer technologies (*e.g.*, email) and by using a sign-language interpreter.

18.     Defendant had a policy of issuing performance evaluations with respect to employees in Mr. Wang's job category. Defendant relied on those performance evaluations when making compensation, promotion and termination decisions.

19.     The performance evaluations issued to Mr. Wang for 2005, 2006 and 2007

characterized him as a "solid contributor." Throughout that period, the users of computer code written and/or perfected by Mr. Wang regularly expressed satisfaction with his work product. Throughout that period, defendant expressed no dissatisfaction with Mr. Wang's technical or communication skills.

20. However, Robin Hieter, a team leader, had long been hostile to the employment of deaf software engineers. She repeatedly criticized plaintiff for alleged performance deficiencies, *i.e.*, alleged poor communication skills, from the beginning of his employment in 2003.

21. From 2005 to 2007, Mr. Wang met weekly with Ms. Hieter. She did not, during that period, criticize Mr. Wang's computer programming ability. She criticized only his alleged inability to communicate.

22. In any event, the criticisms were unwarranted. IBM had regarded Mr. Wang's skills, both technical and with respect to communications, as satisfactory or better from the beginning of his employment.

23. In or about April 2008, plaintiff began reporting to a new manager, Robert Snyder. At the time, Mr. Snyder had little or no managerial experience. He relied heavily on team leaders to inform him of each team member's competence and skills.

24. At that point, Ms. Hieter modified her criticism of Mr. Wang's skills. She no longer criticized him exclusively for alleged poor communication skills, but also for allegedly poor work product. To that end, in early 2008, at which time there was no manager assigned to plaintiff's department, Ms. Hieter assigned Mr. Wang to work on the ART computer program.

25. Mr. Snyder was aware that, to that point, Mr. Wang had been responsible for developing Lotus Notes tools, and that he accordingly was not familiar with the VM, MVS and

REXX programming languages required to develop ART software. Nevertheless, Mr. Wang was not offered training in those languages.

26. Within months, team leaders began to criticize Mr. Wang's allegedly deficient skills, including his technical and communications skills, and to communicate those criticisms to Mr. Snyder. For example, team leader Mike Falcetano criticized Mr. Wang for his failure to take notes during staff conferences. Upon information and belief, Mr. Falcetano complained to Mr. Snyder of this purported failure although Mr. Wang's sign language interpreter explained to him that it would not have been possible for Mr. Wang to take notes while communicating via sign language interpreter.

27. On or about January 21, 2009, Mr. Snyder issued Mr. Wang an unfavorable performance review, the first one that Mr. Wang had received as an IBM employee.

28. Upon information and belief Mr. Snyder's evaluation of Mr. Wang was also tainted by the contributions of one or more persons who resented the alleged inconvenience of communicating with a deaf person.

29. Upon information and belief, IBM established a procedure for an employee to appeal an unfavorable performance review. Pursuant to the established procedure, Mr. Wang scheduled a meeting with Peggy McKeon, his second line manager, for January 29, 2009.

30. On or about January 27, 2009, Mr. Snyder informed Mr. Wang that he was to be laid off as of February 26, 2009.

31. At or about that time, upon information and belief, IBM underwent a business-wide reduction in force in the Systems and Technology Group, in which Mr. Wang worked.

32. IBM selected Mr. Wang for layoff incident to the reduction in force. An official of

IBM's Human Resources Department told Mr. Wang that he had been selected for layoff on the basis of an assessment of his work performance and competences as compared to those of other members of his group.

33. That assessment was, in turn, the product of Mr. Snyder's evaluation, discussed above.

34. The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of plaintiff's health and well being.  As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, punitive damages and attorneys' fees.

## VIOLATIONS OF TITLE I OF THE ADA

35. Plaintiff incorporates by reference Paragraphs 1 through 34 of this Complaint as though the same were fully set forth fully herein.

36. IBM discriminated against plaintiff on the basis of disability when selected him for layoff and terminated his employment on account of his disability.

37. The effect of the practices complained of herein has been to deprive Mr. Wang of equal employment opportunities and otherwise to limit, segregate or classify him because of his disability.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

A.  Declare IBM's conduct complained of herein to be in violation of Wang's rights as secured by the ADA;

B.  Grant a permanent injunction enjoining IBM and its owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any conduct violating Wang's rights as secured by the ADA;

C.  Order IBM to make Wang whole by providing him appropriate lost earnings and benefits from February 23, 2009, together with her unpaid wages, with pre-judgment interest, and other affirmative relief including but not limited to reinstatement, front pay and/or severance pay;

D.  Award Wang compensatory damages to be determined at the time of trial by the jury;

E.  Award Wang punitive damages to be determined at the time of trial by the jury;

F.  Award Wang reasonable attorneys' fees and costs incurred in prosecuting this action;

G.  Grant such further relief as the Court deems necessary and proper.

Dated: New York, New York
       May 2, 2011

                                          Respectfully submitted,

                                          LEVY DAVIS & MAHER, LLP

                                          By: _____/s/_____

                                          Jonathan A. Bernstein (JB 4053)
                                          Attorneys for Plaintiff
                                          39 Broadway, Suite 1620
                                          New York, New York 10006
                                          (212) 371-0033
                                          jbernstein@levydavis.com