UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIAN WANG a/k/a JAMES WANG,

Plaintiff,

- v -

INTERNATIONAL BUSINESS MACHINES CORP.,

Defendant.

11 Civ. 2992 (VB) (JCM)
ECF CASE

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENFORCE THE PARTIES' WRITTEN SETTLEMENT AGREEMENT**

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Attorneys of Record:
Kevin G. Lauri (KL 8714)
Dana G. Weisbrod (DW 0527)
Jillian L. Hunt (JH 7242)

ATTORNEYS FOR DEFENDANT

**TABLE OF CONTENTS**


**Page No.**

TABLE OF AUTHORITIES ........................................ ii-iii

PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS ........................................ 2

A. Plaintiff Invited Defendant to Mediate Plaintiff's Claims ........................................ 2

B. The Parties, in Consultation with Counsel and with the Assistant of the Mediator, Reached a Binding Settlement Agreement ........................................ 2

C. The Parties Negotiated and Executed a Binding MOU Containing All Material Settlement Terms ........................................ 3

D. The Parties Actions After the Mediation Were Consistent with the Fact That a Settlement Agreement Was Reached ........................................ 3

ARGUMENT ........................................ 4

THE MOU IS BINDING AND ENFORCEABLE ........................................ 4

A. The MOU Is Enforceable Based on Its Plain Language ........................................ 5

B. The MOU Is Enforceable Under the Winston Four Fact Factor Test ........................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


Arcadian Phosphates, Inc. v. Arcadian Corp.,
884 F.2d 69 (2d Cir. 1989) .......... 8

Elliott v. City of New York,
11 Civ. 7291, 2012 U.S. Dist. LEXIS 126133 (S.D.N.Y. Aug. 31, 2012) .......... 5, 6, 7

Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC,
04 Civ. 1621 (KMW) (AJP), 2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. June 9, 2005) .......... 10

Jackson v. Heidelberg L.L.C.,
296 Fed. Appx. 102 (2d Cir. 2008) .......... 9

Jackson v. N.Y. City Dep't of Educ. and Good Shepard Servs.,
10 CIV. 9193 (DLC), 2012 U.S. Dist. LEXIS 77305 (S.D.N.Y. June 4, 2012) .......... 9, 10

Janneh v. GAF Corp.,
887 F.2d 432 (2d Cir. 1989) .......... 5, 6, 7

Kowalchuk v. Stroup,
61 A.D.3d 118, 873 N.Y.S.2d 43 (1st Dept. 2009) .......... 8

Krauth v. Exec. Telecard, Ltd.,
890 F. Supp. 269 (S.D.N.Y. 1995) .......... 10

Little v. Greyhound Lines, Inc.,
04 Civ. 6735 (RCC), 2005 U.S. Dist. LEXIS 22247 (S.D.N.Y. Sept. 29, 2005) .......... *passim*

Meetings & Expositions Inc. v. Tandy Corp.,
490 F.2d 714 (1974) .......... 5

Quinones v. Police Dep't of N.Y.,
10 Civ. 6195 (JGK)(JLC), 2012 U.S. Dist. LEXIS 51697 (S.D.N.Y. Apr. 12, 2012) .......... 4

Steinfeld v. HIS Health Inc.,
10 Civ. 3301 (CS) (LMS), 2014 U.S. Dist. LEXIS 56178 (S.D.N.Y. Feb. 14, 2014), adopted by, 10 CV 3301 (CS), 2014 U.S. Dist. LEXIS 55420 (S.D.N.Y. Apr. 21, 2014) .......... *passim*

Powell v. Omnicom,
497 F.3d 124 (2d Cir. 2007) .......... 11

Rahman v. Kaplan Cornelia, Inc.,
12-CV-09095 (SN), 2014 U.S. Dist. LEXIS 17449 (S.D.N.Y. Feb. 11, 2014)..............4, 9, 11

Winston v. Mediafore Entm't Corp.,
777 F.2d 78 (2d Cir. 1985)........................................................................................*passim*

**STATUTES**

Americans with Disabilities Act of 1990, as amended..........................................................1

New York State Human Rights Law ..................................................................................1

Defendant International Business Machines Corp. ("Defendant" or "IBM"), by and through its undersigned counsel Jackson Lewis P.C., respectfully submits this Memorandum of Law in Support of its Motion for an Order Enforcing the Parties' Written Settlement Agreement in this action, which was reached between the parties on April 9, 2014 by participation in voluntary mediation.

**PRELIMINARY STATEMENT**

Plaintiff Jian Wang a/k/a James Wang ("Plaintiff" or "Mr. Wang") filed a Complaint asserting that he was laid-off from IBM because he is deaf in violation of the Americans with Disabilities Act of 1990, as amended ("ADAAA"), and the New York State Human Rights Law ("NYSHRL"). (See Dkt. No. 1). Following the denial of Summary Judgment by the Court, on February 25, 2014 – nearly three (3) weeks before the Joint Pretrial Order was due – Plaintiff Jian Wang a/k/a James Wang ("Plaintiff" or "Mr. Wang") requested, through his counsel, to mediate this action. IBM agreed to Mr. Wang's request. The parties attended private mediation on April 9, 2014 (the "Mediation"). After lengthy settlement discussions – during which Mr. Wang was an active participant – the parties reached a settlement. This agreement was memorialized in a Memorandum of Understanding ("MOU"), which was reviewed and edited by Mr. Wang and his counsel and executed by counsel for both parties.

The plain language of the MOU indicates that a settlement was agreed to by the parties. Additionally, the MOU, the circumstances surrounding its formation, and the actions of the parties following its formation indicate that the parties intended for the MOU to bind them. Plaintiff's apparent change of heart is of no moment. The plain language of the MOU and the parties' intent are binding. Therefore, this Court should enforce the parties' settlement agreement.

## STATEMENT OF FACTS

### A. Plaintiff Invited Defendant to Mediate Plaintiff's Claims

On February 25, 2014, Andrew Rozynski, Esq. ("Mr. Rozynski"), counsel for Mr. Wang, called IBM's counsel to see if IBM was interested in mediation. (Weisbrod Dec. ¶ 3). Mr. Rozynski suggested that the parties mediate privately. (Weisbrod Dec. ¶ 3). On February 28, 2014, IBM agreed to mediate this matter and counsel for the parties agreed to retain Ruth Raisfeld, Esq. as the mediator (the "Mediator"). (Weisbrod Dec. ¶ 4). The parties scheduled mediation for April 9, 2014 (the "Mediation"). (Weisbrod Dec. ¶ 9). Accordingly, the parties filed a letter with the Court requesting an extension of the Court's deadline to submit a Joint Pretrial Order for the stated purpose of allowing the parties to explore settlement. (Weisbrod Dec. ¶ 5). In anticipation of the Mediation, the parties executed a Mediation Agreement in which the parties agreed to split the Mediation fees, with IBM paying 80% and Mr. Wang paying 20%, however, the parties agreed that IBM would pay the full cost of the Mediation in the event the parties reached a settlement. (Weisbrod Dec. ¶ 7).

### B. The Parties, in Consultation with Counsel and with the Assistant of the Mediator, Reached a Binding Settlement Agreement

On April 9, 2014, the parties attended the Mediation. (Weisbrod Dec. ¶ 9). The Mediation began at 10:00 a.m. and lasted for a full day. (Weisbrod Dec. ¶ 10). Mr. Wang attended along with Mr. Rozynski, who is fluent in American Sign Language, Eric M. Baum, Esq., and a third-party sign language interpreter. (Weisbrod Dec. ¶ 11). Defendant and counsel for Defendant were present, as was the Mediator. (Weisbrod Dec. ¶ 11). After extensive discussions and proposals, the parties reached agreement as to a monetary settlement amount. (Weisbrod Dec. ¶ 13).

### C. The Parties Negotiated and Executed a Binding MOU Containing All Material Settlement Terms

After the settlement figure was agreed to, Defendant's counsel prepared a MOU which includes all material terms of settlement. (Weisbrod Dec. ¶ 14). Mr. Rozynski reviewed the MOU with Plaintiff and then requested that counsel for Defendant make changes to the MOU, which she did. (Weisbrod Dec. ¶ 14). Then, Mr. Rozynski and counsel for Defendant executed the MOU. (Weisbrod Dec. ¶ 14). The MOU expressly states that it is "a binding agreement" and that it "contains all material terms," including the settlement amount, a release of claims, non-disparagement and confidentiality provisions, a liquidated damages clause, a no re-hire provision, and the execution of a Stipulation of Dismissal with Prejudice. (Weisbrod ¶ 16, Ex. B). While the MOU contemplated that the parties would enter into a Confidential Negotiated Settlement Agreement and General Release ("Agreement and General Release"), neither party expressly reserved the right not to be bound by the MOU. (Weisbrod Dec. ¶ 17).

Consistent with the fee-splitting agreement and the fact that a settlement was reached, IBM paid 100% of the Mediation fees and Plaintiff paid nothing. (Weisbrod Dec. ¶ 18).

### D. The Parties Actions After the Mediation Were Consistent with the Fact That a Settlement Agreement Was Reached

On April 15, 2014, the parties jointly advised the Court by letter that they reached a binding settlement agreement in connection with this matter and requested adjournment of all pretrial deadlines. (Weisbrod Dec. ¶ 19). The parties ceased active litigation of the matter and directed their attention to the preparation of the more formal settlement document. (Weisbrod Dec. ¶ 20). Thereafter, counsel for Defendant sent Mr. Rozynski an execution copy of the Agreement and General Release in furtherance of the fully-executed MOU. (Weisbrod Dec. ¶ 21). On April 28, 2014, Mr. Rozynski sent e-mails to counsel for Defendant with minor revisions to the Agreement and General Release. (Weisbrod Dec. ¶ 22). In the e-mails, Mr.

Rozynski confirmed that he was in communication with his client regarding the Agreement and General Release. (Weisbrod Dec. ¶ 23, Ex. C).

On May 8, 2014, counsel for Defendant sent an e-mail to Mr. Rozynski attaching the execution copy of the Agreement and General Release. (Weisbrod Dec. ¶ 28). Mr. Rozynski did not respond. (Weisbrod Dec. ¶ 29). Instead, on May 20, 2014, he submitted a request to file a motion to withdraw as counsel. (Weisbrod Dec. ¶ 30). Mr. Rozynski did not indicate the reasons for his request, other than to state that there is an "irreconcilable conflict" between Plaintiff and Mr. Rozynski's firm. (Weisbrod Dec. ¶ 30). Defendant has also learned that Plaintiff may oppose enforcement of the settlement agreement. (Weisbrod Dec. ¶ 31). Defendant has not been advised by Plaintiff's counsel or by Plaintiff as to the reason for his position change. (Weisbrod Dec. ¶ 32). Based on the letters submitted to the Court by Plaintiff's counsel, it seems clear that Plaintiff's counsel agrees with IBM's counsel that there is a binding settlement agreement between the parties. (See Dkt. Nos. 60, 62, 66).

## ARGUMENT

## THE MOU IS BINDING AND ENFORCEABLE

"It is well-settled that a settlement agreement is presumptively binding and conclusive" and, as settlement agreements "are strongly favored by New York courts" they "may not be lightly cast aside." Quinones v. Police Dep't of N.Y., 10 Civ. 6195 (JGK)(JLC), 2012 U.S. Dist. LEXIS 51697 at *11 (S.D.N.Y. Apr. 12, 2012) citing Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007).[1] A preliminary agreement may be binding even where parties intend to later memorialize the agreement in a formal writing. Steinfeld v. IMS Health Inc., 10 Civ. 3301

[1] "The Second Circuit has not resolved the question of whether a district court should apply federal or state law to decide a motion to enforce a settlement where the jurisdiction of the district court rests on a federal question." Rahman 12-CV-09095 (SN), 2014 U.S. Dist. LEXIS 17449, at fn 4 (S.D.N.Y. Feb. 11, 2014) (collecting cases). However, "the [New York] Court of Appeals has noted that there is no material difference between New York and federal common law." Id.

(CS) (LMS), 2014 U.S. Dist. LEXIS 56178 (S.D.N.Y. Feb. 14, 2014), adopted by, 10 CV 3301 (CS), 2014 U.S. Dist. LEXIS 55420 (S.D.N.Y. Apr. 21, 2014).

As discussed below, the MOU is enforceable based on its plain language, as previously found by courts in this Circuit. See, e.g., Little v. Greyhound Lines, Inc., 04 Civ. 6735 (RCC), 2005 U.S. Dist. LEXIS 22247, at *3 (S.D.N.Y. Sept. 29, 2005); Elliott v. City of New York, 11 Civ. 7291, 2012 U.S. Dist. LEXIS 126133 (S.D.N.Y. Aug. 31, 2012); Janneh v. GAF Corp., 887 F.2d 432 (2d Cir. 1989). The MOU is also enforceable if the Court decides to apply the four factors relevant to the determination of whether an intent to be bound exists in connection with *oral* preliminary agreements. Winston v. Mediafore Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985). Therefore, this Court "has the power to enforce summarily, on motion, [the] settlement agreement reached in [this] case that [is] pending before it." Meetings & Expositions Inc. v. Tandy Corp., 490 F.2d 714, 717 (1974).

**A. The MOU Is Enforceable Based on Its Plain Language**

A written agreement signed by counsel for the parties confirming settlement is enforceable even where the parties intended to create a more formal written document at a later date. See Little, 2005 U.S. Dist. LEXIS 22247; see also Elliott, 2012 U.S. Dist. LEXIS 126133. "To determine whether a settlement was agreed to, [the Court] look[s] first to the plain language of the agreement." Little, 2005 U.S. Dist. LEXIS 22247 at *3.

Little, 2005 U.S. Dist. LEXIS 22247, where the court granted defendant's motion to enforce the settlement agreement entered into after a mediation, is directly on point. In Little, the plaintiff former employee brought an employment discrimination action after his employment was terminated by the defendant. Id. at *3. The plaintiff and the defendant, along with their respective counsel, participated in mediation and the mediator successfully negotiated an agreement between the parties. Id. Counsel for the parties each signed a form stating that

"the parties have reached a settlement agreement and will file appropriate papers." Id. The attorneys also initialed the essential terms of the agreement. Id. The defendant then forwarded a formalized agreement to the plaintiff for execution, and the parties notified the court that they had reached a settlement. Id. The court granted the defendants' motion to enforce the settlement. Id. at *4, 6 (holding a settlement is enforceable where the plaintiff's counsel and the defendant's counsel "each signed a settlement agreement that clearly indicated that the parties had reached a settlement through mediation.").

Similarly, in Elliott, the plaintiffs' motion to enforce settlement was granted where, following mediation, the parties agreed to settlement terms. 2012 U.S. Dist. LEXIS 126133. The plaintiffs produced an e-mail from the defendants' counsel confirming the agreement as well as a document signed by counsel for both parties establishing that the parties reached a settlement agreement. Id. at *5, 7-8. The court held that plaintiffs established the existence of an agreement and granted the motion to enforce. Id.

The Janneh, 887 F.2d 432, case is also instructive. There, the plaintiff instituted a *pro se* action against his employer alleging that he was subjected to racially hostile work environment and was wrongfully denied a promotion. Id. at 434. The court appointed counsel for plaintiff and his counsel telephoned defendant's counsel and proposed a settlement amount. Id. The defendant's counsel then proposed a counteroffer. Id. The plaintiff's counsel recommended the plaintiff accept the defendant's counteroffer and the plaintiff agreed. Id. Thereafter, the plaintiff's counsel forwarded a letter to defense counsel stating that the plaintiff was "agreeable to settling his claim against [the employer] for $3,000.00." Id. The plaintiff signed the letter. Plaintiff's counsel subsequently withdrew as counsel and plaintiff disavowed the settlement. Id. The employer moved to enforce the settlement agreement and the Second

Circuit held that a binding settlement was reached between the parties because the letter "convey[ed] a clear message of intention to settle." Id. at 436-37.

As in Little and Elliott, here, Mr. Wang and IBM attended a mediation, reached agreement on settlement terms, and entered into a written agreement. (Weisbrod Dec. ¶¶ 11, 13, 14). The plain language of the MOU is clear and unequivocal. (Weisbrod Ex. B). The MOU states that it is "a binding agreement" and that it "contains all material terms." (Weisbrod Ex. B). Mr. Wang reviewed the MOU with his counsel. (Weisbrod Dec. ¶ 14). Counsel for both parties then executed the MOU. (Weisbrod Dec. ¶ 14).

Accordingly, the MOU is a binding, enforceable agreement. See Little, 2005 U.S. Dist. LEXIS 22247 at *5 ("[i]f an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld.") (internal citations and quotations omitted).

**B. The MOU Is Enforceable Under the Winston Four Fact Factor Test**

The language of the MOU, the circumstances surrounding its formation and the actions of the parties following its formation indicate that the parties intended for the MOU to bind them. (Weisbrod Dec. ¶¶ 3, 9-20, Ex. B).The Second Circuit utilizes a four part test to determine whether a preliminary oral agreement is enforceable. Winston, 777 F.2d at 80. The analysis is required only "in the absence of a document executed by both sides." Id. The test balances whether parties intended to be bound. Id. In the instant matter, since the parties executed the MOU that stated that they reached a settlement agreement and intended to be bound by the terms of the MOU, this Court need not conduct the Winston analysis. (Weisbrod Dec. Ex. B). Instead, the analytical approach to be taken here is that applied in Little. However, some "courts within the Second Circuit have utilized the Winston factors to assess the binding effects of written preliminary settlement agreements." Steinfeld, 2014 U.S. Dist. LEXIS 56178, *20-21

(collecting cases). These factors are: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Id. at 80 (internal citations omitted). In this case, each Winston factor clearly demonstrates that Wang and IBM intended to be bound by the MOU executed at the Mediation. (Weisbrod Dec. Ex. B).

**1. In the MOU, Plaintiff Did Not Expressly Reserve His Right Not to Be Bound**

The first factor is the "most important" and where consideration of the first factor alone belies the intent of the parties, consideration of the remaining factors is unnecessary. Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72-73 (2d Cir. 1989) (determining the intent of the parties by "look[ing] no further than the first factor"). Here, the language of the MOU supports the conclusion that the parties intended to be bound thereby. (Weisbrod Dec. Ex. B). The MOU states that it is "a binding agreement." (Weisbrod Dec. Ex. B). Significantly, neither party expressly reserved the right not to be bound by the MOU. (Weisbrod Dec. Ex. B). If Plaintiff intended that he not be bound by the MOU until there was formal executed settlement documentation, Plaintiff was required to explicitly reserve that right not to be bound, pending the more formal written document. See Kowalchuk v. Stroup, 61 A.D.3d 118, 122, 873 N.Y.S.2d 43, 47 (1st Dept. 2009) ("the mere fact that that the parties intended to draft formal settlement papers is not alone enough to imply an intent not to be bound except by a fully executed document;" rather, the parties would have had to make an "explicit reservation that there would be no contract until the full formal document is completed and executed.") (emphasis omitted).

Further indicating that the parties intended to be bound by the MOU, days after the Mediation, the parties jointly advised the Court by letter that they had settled the matter. (Weisbrod Dec. ¶ 19). See Steinfeld, 2014 U.S. Dist. LEXIS 56178, *23-24 (collecting cases and holding that "[c]ounsel's joint communication to Judge Seibel's chambers that they had settled the matter further indicates that the agreement was meant to be binding").

Although consideration of the three remaining factors is unnecessary giving the clear intent of the parties to be bound by the MOU, the three remaining factors also weigh in favor of enforcing the MOU.

**2. After Executing the MOU, the Parties Undertook Partial Performance**

Actions taken following the Mediation suggest that Plaintiff understood that the case was settled. See Rahman v. Kaplan Cornelia, Inc., 2014 U.S. Dist. LEXIS 17449, at *13, citing 22 N.Y. Jur. 2d, Contracts § 29 (2013) ("[i]n the formation of a contract, only the overt acts of the parties may be considered in determining mutual assent"). At the conclusion of the Mediation, the Plaintiff did not pay any Mediation fees, which is consistent with the fact that settlement was reached. (Weisbrod Dec. ¶ 18). After executing the MOU, "the parties began to perform on the agreement by preparing and exchanging draft settlement documents, and most significantly, communicated the settlement to the [c]ourt." Jackson v. N.Y. City Dep't of Educ. and Good Shepard Servs., 10 CIV. 9193 (DLC), 2012 U.S. Dist. LEXIS 77305, at *6-7 (S.D.N.Y. June 4, 2012) (internal citations omitted); see also Jackson v. Heidelberg L.L.C., 296 Fed. Appx. 102, 103 (2d Cir. 2008) (finding partial performance where defendant delivered to plaintiff a written agreement). Notably, contemporaneous e-mail communications between counsel confirm that Plaintiff was actively involved in the discussions about formal settlement documents. (Weisbrod Dec. ¶¶ 23-23, 25-26).

**3. The MOU Contains All Terms of the Settlement**

The third Winston factor examines whether all of the terms of the alleged agreement were agreed upon. Winston, 777 F.2d at 80. Here, the MOU confirms that it "contains all material terms," including the settlement amount, the release of claims, non-disparagement and confidentiality provisions, a liquidated damages clause, a no re-hire provision, and the execution of a Stipulation of Dismissal with Prejudice. (Weisbrod Ex. B). Thus, this factor supports enforcement. See Steinfeld, 2014 U.S. Dist. LEXIS 56178, at *42-43 (holding that this factor weighs in favor of concluding the parties intended to be bound by the agreement where the language of the agreement contained "all essential terms.").

**4. The Parties' Agreement Was Reduced to Writing**

Even if this agreement was the type usually reduced to a writing, that is precisely what the parties did at the conclusion of the Mediation by documenting their agreement in the MOU and executing the same. (Weisbrod Ex. B). Accordingly, "the fourth factor is not particularly meaningful in this context, [the agreement is] in writing." Krauth v. Exec. Telecard, Ltd., 890 F. Supp. 269, 295 (S.D.N.Y. 1995). The MOU contains "all material terms" of the settlement. See Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC, 04 Civ. 1621 (KMW) (AJP), 2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. June 9, 2005) (enforcing the settlement and holding that emails that memorialized the terms were sufficient for a writing). Indeed, in this case, a binding settlement was reached even though the parties anticipated preparing more formal settlement papers. See Jackson, 2012 U.S. Dist. LEXIS 77305, at *9 ("the expectation that a written agreement would follow does not prevent a finding that the parties had already reached a binding agreement.").

In sum, even if this Court uses the Winston test, the four factors clearly weigh in favor of a finding that the parties agreed to be bound by the MOU executed at the Mediation.

* * *

The fact that Plaintiff has now simply changed his mind and attempts to reject the settlement is of no moment. Rahman, 2014 U.S. Dist. LEXIS 17449, at *10-11. Indeed, "once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, "even if a party has a change of heart between the time of the agreement . . . and the time it is reduced to writing." Rahman, 2014 U.S. Dist. LEXIS 17449, at *10-11. "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." Powell, 497 F.3d at 128.

Here, Plaintiff entered into a settlement agreement with Defendant, the material terms of which are memorialized in the MOU, the parties communicated this settlement to the Court, and the parties finalized more formal settlement papers. Accordingly, this Court should enforce the parties' written settlement agreement.

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court enforce the parties' MOU and enter an order dismissing Plaintiff's claims in their entirety and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Dated: May 23, 2014
New York, New York

By: ______________________

Kevin G. Lauri (KL 8714)
Dana G. Weisbrod (DW 0527)
Jillian L. Hunt (JH 7242)

ATTORNEYS FOR DEFENDANT