Copies Mailed/Faxed
Chambers of Vincent L. Briccetti

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JIAN WANG a/k/a JAMES WANG,                          :
                              Plaintiff,             :
                                                     :
v.                                                   :        **ORDER**
                                                     :
INTERNATIONAL BUSINESS MACHINES                      :        11 CV 2992 (VB)
CORP.,                                               :
                              Defendant.             :
-----------------------------------------------------------x

Plaintiff brought this employment discrimination case against his former employer,

alleging he was terminated because he is deaf.  Judgment was entered in this case almost seven

years ago, on October 22, 2014.  Plaintiff, who is now proceeding pro se, has since made

numerous requests to reopen this case, each of which, as outlined below, has been denied.

Plaintiff has also twice appealed to the Second Circuit, which has twice affirmed the decisions of

this Court.  Nevertheless, plaintiff does not appear to understand that **this case is closed**.

Now pending are plaintiff's requests that the Court provide him with a so-called

"Counter-Proposed Judgment (Correct Version)" he sent to the Court in 2014, and plaintiff's

renewed motion for relief pursuant to Rule 60(b)(2).

The requested document is attached to this Order.  Plaintiff's renewed Rule 60(b)(2)

motion is DENIED.  Moreover, plaintiff is enjoined from making further submissions in this case

related to any version of his counter-proposed judgment.

The Court presumes the parties' familiarity with the factual background and summarizes

only the relevant procedural history.

I.      2014 Motion to Enforce the Settlement Agreement

In early 2014, the Court denied defendant's motion for summary judgment and

subsequent motion for reconsideration.  (Docs. ##50, 57).  The parties—at that point both

1

represented by counsel—then engaged in mediation, where they reached a settlement agreement. One of defendant's attorneys prepared a memorandum of understanding memorializing the material terms of the agreement. One such term was that defendant would make a total settlement payment of $207,500. Plaintiff's counsel gave plaintiff a copy of the memorandum of understanding, and counsel for both parties signed it. However, when plaintiff's counsel emailed a copy of the proposed formal settlement agreement and release to plaintiff for him to review and sign, plaintiff asserted he was "shocked" to learn the case had settled for $207,500, rather than $207 million, and he refused to sign the proposed formal agreement and release.

Defendant moved to enforce the settlement as memorialized in the memorandum of understanding, and plaintiff's counsel moved to withdraw. (Docs. ##68, 72). The Court granted both motions. (Docs. ##83, 89). In its October 7, 2014, Memorandum Decision granting defendant's motion to enforce, the Court directed defendant to submit a proposed judgment and, because plaintiff was proceeding pro se at that time, permitted plaintiff to submit a counter-proposed judgment in accordance with Local Rule 77.1. (Doc. #89).

The Court entered Judgment on October 22, 2014. (Doc. #92).

The same day, the Court construed plaintiff's counter-proposed judgment as a motion for reconsideration of the Court's decision granting the motion to enforce the settlement agreement, and denied the motion for reconsideration. (Doc. #93). Plaintiff appealed, and the Second Circuit affirmed on the basis that plaintiff's attorney had actual authority to settle the case, noting that beyond plaintiff's own "implausible statement," plaintiff did not identify any evidence to show that his attorney was directed to settle for $200 million or more. (Doc. #104).

II.     Plaintiff's 2019 "Motion to Reopen"

On July 1, 2019, plaintiff filed a "Motion to Reopen," stating he was "shocked" to discover that the "correct" version of his counter-proposed judgment was never filed on the Court's Electronic Case Filing ("ECF") System. (Doc. #106 at ECF 1).[1] Plaintiff attached the supposed "correct" version, which he dated October 31, 2014, to his motion. (Id. at ECF 19). Construed liberally, plaintiff's motion raised the argument that the 2014 settlement should be voided because his attorney did not have authority to settle the matter on his behalf in 2014 and that the "correct" version of the counter-proposed judgment provided contemporaneous proof of this contention.

By Order dated October 28, 2019, the Court construed the "Motion to Reopen" as one pursuant to Fed. R. Civ. P. 60(b)(2) as seeking relief from a final judgment, order, or proceeding, and denied it as untimely and because the "correct" version of the counter-proposed judgment "would not have changed the outcome of this case" even if the Court had considered it in 2014. (Doc. #111 at ECF 4).[2]

Plaintiff again appealed. The Second Circuit again affirmed, explaining that plaintiff's motion for relief under Rule 60 was meritless and also untimely, under both the one-year

---

[1]     References to "Doc. #__ at __" refer to the page numbers automatically assigned by the Court's ECF system.

[2]     In addition, the Court explained that plaintiff appeared to have misconstrued the purpose of the provision in the Court's October 7, 2014, Memorandum Decision, directing him to submit a counter-proposed judgment. (Doc. #111). Plaintiff was supposed to submit a counter-proposed judgment that conformed to the Court's decision enforcing the settlement agreement. A judgment is "[a] court's final determination of the rights and obligations of the parties in a case. The term judgment includes an equitable decree and any order from which an appeal lies." Judgment, Black's Law Dictionary (11th ed. 2019) (citing Fed. R. Civ. P. 54). Instead, plaintiff submitted a document that was titled "Counter-Proposed Judgment" but largely asserted grounds for reconsideration. (Doc. #93). Thus, as noted above, the Court construed the submission as a motion for reconsideration and denied it. (Id.).

3

limitations period applicable to Rule 60(b)(1)–(3), and the "reasonable time" period during

which a Rule 60(b)(4)–(6) motion must be brought. (Doc. #115). Specifically, the Second

Circuit stated, "[Plaintiff's] claimed reason for waiting nearly five years before filing this

motion—that he never checked the district court's docket to confirm that it had received the

second counter-proposed judgment because of the $.10-per-page printing fee—does not justify a

delay of this magnitude." (Id. at 5). Put otherwise, plaintiff raised his argument that the Court

did not consider the "correct" version of the counter-proposed judgment too late.

III.   Plaintiff's Further Requests to Reopen the Case

On April 21, 2021, plaintiff filed another motion (which he labeled a "motion to reopen

and cure defective") to reopen this case. (Doc. #116). On May 10, 2021, the Court denied the

request as plainly without merit, noting the motion repeated the same arguments plaintiff had

made before, and the Court had rejected before. The Court warned plaintiff that if he filed

another frivolous motion in this case, the Court would summarily deny it and issue a filing

injunction. (Doc. #119). The Court further warned plaintiff that the Court would impose

monetary sanctions on plaintiff if he disregarded the Order. (Id.). Plaintiff then filed a "reply"

(Doc. #120), which the Court reviewed. The Court determined that the reply did not change its

ruling on the motion to reopen. (Doc. #121).

Then, on May 19, 2021, plaintiff filed a document entitled "Motion to Clarify Fact," in

which plaintiff sought to vacate the judgment entered in this case in 2014. (Doc. #122). The

Court denied this motion and ordered that plaintiff not file any further motions, letters, or

submissions in this case without first submitting a letter to the Court seeking permission to do so

and explaining the basis for such submission. (Doc. #123). The Court also warned that if

4

plaintiff wished to avoid having monetary sanctions imposed against him, he should stop filing further submissions in this case.  (Id.).

Thereafter, Plaintiff made several requests to the Court and the Clerk's Office that it locate the "correct" or "second" "Counter-Proposed Judgment" which plaintiff claims he mailed to the Court on or about November 1, 2014.  (Docs. ##127, 129, 132).  Plaintiff stated he was requesting the so-called "second" or "correct" counter-proposed judgment so he could "take a proper action."  (Doc. #132).  The Court denied each of these requests.  (Docs. ##128, 131, 133).

IV.     The Instant Request

By letter dated June 25, 2021, plaintiff wrote to the records management division of the Clerk's Office, asking it to "locate the document named 'correct version of Counter-Proposed Judgment' dated October 31, 2014" and that he be sent a copy of that document.  (Doc. #134).  On July 14, 2014, the Clerk's Office received another letter from plaintiff, dated July 13, 2021 (Doc. #135), which is substantially identical to the June 25 letter.

In response to these letters, the Court has undertaken a review of its records and has located in the Clerk's Office's hard copy file for this case a document entitled "Counter-Proposed Judgment (Correct Version)" dated and signed October 31, 2014, and received by the Court on November 4, 2014.  A copy is attached hereto.  According to the "received" stamp, this document was received by the Court on November 4, 2014, approximately two weeks after Judgment was entered on October 22, 2014.  The "Counter-Proposed Judgment (Correct Version)" the Court received on November 4, 2014, is substantially the same as the document the Court considered in its Order dated October 28, 2019, denying plaintiff's Rule 60(b) motion.  For reasons that are not clear, this document was never placed on the ECF docket, although it was retained in the Clerk's Office's hard copy file for this case.

VI.    Renewed Rule 60 Motion

Because plaintiff contends "For some reasons, the key document was never filed on the Court's ECF system that caused I lose my case all times" (Doc. #134), the Court further construes plaintiff's June 25 and July 13, 2021, letters as a renewed motion seeking relief from a final judgment, order, or proceeding, based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).  However, to the extent plaintiff requests that the Court reopen this case because the Court did not previously consider evidence contained in the "Counter-Proposed Judgment (Correct Version)," that request is DENIED.

As an initial matter, the renewed Rule 60(b)(2) motion is untimely.  See Fed. R. Civ. P. 60(c) (Rule 60(b)(2) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding").  As both this Court and the Second Circuit explained with respect to plaintiff's 2019 Rule 60(b) motion, plaintiff's argument was untimely in 2019. For the same reasons, two years later, it is still untimely.  Accordingly, the Court is not required to further review the attached "Counter-Proposed Judgment (Correct Version)" or any argument to re-open this case based upon this document.

Nevertheless, given plaintiff's pro se status and the fact that the Court has now located the "Counter-Proposed Judgment (Correct Version)" received by the Court in 2014 but not placed on the ECF docket, the Court has carefully reviewed that document—in particular, its Exhibit A, which exhibit plaintiff did not submit to the Court in 2019 (see Doc. #106)[3]—to

---

[3]    Plaintiff did not attach this "Exhibit A" to the version of the "Counter-Proposed Judgment (Correct Version)" plaintiff submitted and the Court considered in its Order of October 28, 2019.  This Exhibit A consists of two pages of pictures and explanations of certain American Sign Language ("ASL") signs, and three pages of hand-drawn representations of plaintiff and his

6

consider if anything in the attached "Counter-Proposed Judgment (Correct Version)" warrants a reopening of this case.

It does not.

Nothing in the "Counter-Proposed Judgment (Correct Version)" the Court received in 2014 changes the Court's prior decision to enforce the settlement memorialized in the memorandum of understanding, or its numerous orders denying plaintiff's requests to reopen this case. The attached "Counter-Proposed Judgment (Correct Version)" merely raises the same arguments previously rejected that plaintiff's attorney did not have authority to settle the case and that plaintiff's attorney misunderstood the amount for which plaintiff would settle the case. But as the Second Circuit noted in affirming this Court's 2014 decision to enforce the settlement, other than Wang's own "implausible statement" that he directed his counsel to settle for $200 million or more, Wang did not identify in his 2014 appeal what evidence he would present to show that his attorney was directed to settle for $200 million or more. (Doc. #104). The attached "Counter-Proposed Judgment (Correct Version)" suffers from the same defect: other than plaintiff's own contentions that he directed his attorney only to settle for $200 million or more, the document sets forth no new evidence that plaintiff's attorney did not have authority to settle the case. Thus, the "Counter-Proposed Judgment (Correct Version)" the Court received in 2014 does not warrant re-opening this case or relief from the final judgment.

**To be clear, this case is over, and the Court will not re-open it.**

**Furthermore, given plaintiff's numerous untimely efforts to re-open this case—most of them based upon his reliance on the various versions of the so-called counter-proposed**

---

former attorney. The Court notes that it has previously reviewed at least one of these pages in considering the motion to enforce. (See Doc. #88 at ECF 24).

judgment—it is HEREBY ORDERED plaintiff is barred from filing any further submissions regarding the first or "correct" counter-proposed judgment or any arguments related thereto. See Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (per curiam) (upholding the district court's authority to issue a filing injunction when a "plaintiff abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings"). As the Supreme Court explained in a similar context,

> Every paper filed with the Clerk of [] Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual processing of [plaintiff's] frivolous requests [] does not promote that end.

In re McDonald, 489 U.S. 180, 184 (1989). **Accordingly, the Court will not consider any further arguments plaintiff raises based upon any version of his counter-proposed judgment.**

## CONCLUSION

Plaintiff's renewed Rule 60(b)(2) motion is DENIED.

**Plaintiff shall not file anything else related to his counter-proposed judgment. If plaintiff fails to comply with this Order, he will be sanctioned $500.00 to be paid to the Court.**

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Order to plaintiff at the following address:

James Wang
14 Roy Lane
Highland, NY 12528

Dated: July 20, 2021
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
JIAN WANG a/k/a JAMES WANG,               x

            Plaintiff,                    x

    -against-                             x

            IBM                           x

            Defendant(s),                 x

-----------------------------------------------------x



**Counter-Proposed Judgment**
(Correct Version)
11 CV 2992 (VB)

1.  My name is James Wang, ( "Jim" or "Plaintiff") now proceeding pro se. I am

deaf, defined by Americans With Disabilities Act. the Plaintiff on the above mentioned

case against International Business Machines Corp. ("IBM" or "Defendant"), respectfully

submit paper to APPEAL the Court's Memorandum Decision because my former attorney

named Andrew Rozynski ("Mr. Rozynski") from Eisenberg & Baum LLP (the "Firm")

"repeatedly misunderstood" my demand before and during the mediation session, that is

because American Sign Language ("ASL") signs for thousand and million are very similar

in fact. Before I reply the Court's Memorandum Decision, please kindly see exhibit A to get

familiar with ASL signs for $200 thousand and $200 million.

2.     I submitted wrong version of Counter-Proposed Judgment to the Court which

responded to Defendant's proposed judgment I thought, dated on October 22, 2014. I

realized that when I received paper from Docket Services on October 27, 2014 that

Counter-Proposed Judgment was supposed to respond to the Court's Memorandum

Decision, not defendant's proposed judgment as I was not directed to do so clearly as pro

se. If it is too late for the Court for reconsideration. It would be understandable, and I shall have a fair opportunity to argue that in the Court of Appeal.

### Reply to the Court's Memorandum Decision

3.    "The mediation session could proceed without the ASL interpreter because Mr.

Rozynski is fluent in ASL" The Court Interpreters Act. 28 U.S.C. § 1827 provides that Courts prescribe, determine, and certify the qualification of persons who may serve as certified interpreters. Therefore, Mr. Rozynski is not qualified and certified for ASL, so his ASL skill is not equal to those of certified ASL interpreter. Therefore, his communicated with me was not EFFECTIVE. Mr. Rozynski may discuss case with deaf Plaintiff informally in private meeting. But he could not serve deaf Plaintiff directly as ASL interpreter in formal event such as mediation session when defendant and anyone else were present. The mediator misunderstood my settlement demand again without professional ASL interpreter, because Mr. Rozynski misunderstood my demand in the first place and then act as ASL interpreter for the mediator, he would of course misinterpreted what I signs for the mediator, event he may include own possible opinion in the translation which I could not be able to verify his translation as I could not hear.

4.    "he had told Mr. Rozynski several times, both before and during the mediation session, he wanted to settle the case for at least $200 million" I told Mr. Rozynski several times via videophone BEFORE the mediation session that I demanded $300 million to resolve my case. During the mediation session, I told Mr. Rozynski that I accept any number over $200 million to settle the case against original demand of $300 million.

He did not object it, and I did not realize that he misunderstood it for any number over $200 thousand, because ASL signs for thousand and million are very similar.

4. "Mr. Rozynski added that they has never discussed a multi-million dollar settlement" if true, he never have indicated that to me in ASL and writing both before and during the mediation session. that is because he misunderstood my demands for 6-figure amount instead of 9-figure amount in the first place. If he knew I demand for 9-figure amount, he should have indicated that before the mediation. So that we can discuss the demand and adjust the demand before the mediation.

5. "had explained the MOU's terms with plaintiff "line by line"" He actually did not explain everything in the MOU's terms.

6. "there was no miscommunication between us at the settlement mediation." that is because ASL signs for thousand and million are very similar, I thought he understood my demand at mediation until after one month I received a settlement agreement. I started to realize there was a miscommunication before and during the settlement mediation about thousand and million in ASL signs. After the mediation, I thought that I would get 9-figure amount, so I was looking for a house in between $3 millions and $8 millions in Los Angeles, CA. I contacted a Chinese realtor and promised to retain him. He sent me a list of mansions there. See exhibit B. I dropped the plan after I was shocked with the amount of settlement in the settlement agreement. The fact explains itself that we miscommunicated each other about the amount of settlement before and during the mediation session.

7.   Andrew Rozynski's Authority
    7.1   "the Court does not find credible plaintiff's claim that he repeatedly told Mr. Rozynski he would not settle for less than $200 million." I have indicated to

Mr. Rozynski clearly that I would take any number over $200 million during the mediation session.  He misunderstood it for $200 thousand. I have no reason to repeatedly told him if he understood my settlement demand. I talked to my former attorney named Jonathan Bernstein and Al Noll that I was seeking 9-figure amount to resolve my case. Because 9-figure amount is extremely confidential for my safety, I did not share it with many people except two friends of mine, my family and my parent, my sister and her family members. Also see exhibit B that I was seeking for a mansion in between $3 millions and $8 million in Los Angeles, CA.

7.2     "could plausibly believe defendant would settle this case for $200 million", Mr. Rozynski should have indicated that to me before the mediation session, because he was my consult and had certain experience in some applicable laws, and make an assessment of what damages should be available. That was his job. I know nothing about laws. I just read a news several years ago to learn that a woman worked for hospital as a nurse and she complained to her boss about sexual harassment. As a result. she was fired, and she filed a lawsuit against the hospital in court. she eventually won $137 millions. Based on that news, I got an idea.

7.3     "$200 million is approximately 3,000 times greater than plaintiff's annual salary at the time of his termination" I did not indicate that. I was intend to stop IBM's wrongdoing in heavy burden. that is part of my emotional damages. Emotional damages can be very expensive. IBM's wrongdoing dramatically changed my life so bad and damaged my future IT career. Because I am deaf, have

much more difficulty to find a suitable work anywhere else. Moreover, I have reviewed all deposition transcripts and found that witnesses lied and perjured themselves to cover the truth under oath.

7.4 "Mr. Rozynski informed plaintiff he had a "10% or less" chance of winning at trial" Mr. Rozynski asked me how much I wanted before I won summary judgment. I indicated to him that I was seeking $100 million, he misunderstood it for $100 thousand in the first place. I believe he thought I was satisfied with $100 thousand and not worth for them to work a lot on my case. He thought that I did not feel I have high chance of winning lawsuit. When I won summary judgment, he asked me much higher than $100 million (he thought $100 thousand at that time). I then indicated that I wanted $300 million, he misunderstood it for $300 thousand, he did not object it. Less money meant less winning chance. See exhibit A. No wonder he was intended not let me see "$370,000" in the certain document in advance before mediation. Because he specified "$370,000" in document which higher than my original demand for $300 thousand he thought.

7.5 "Mr. Rozynski clearly had apparent authority to settle for $207,500". I never have authorized him to settle for $207,500. My former attorney named Jonathan Bernstein sent an email to the Firm and clearly stated that "Jim did not reduce his $200,000 demand (back pay from the time of termination)" and reinstatement in late 2011. $200,000 was for from 2009 through 2011 at that time. See exhibit C. It is factual evidence. So now it should be around $400,000 from the time of termination and reinstatement, it does not include attorney's fee and other

applicable fees. Because IBM rejected reinstatement in the first place, so economic damages should be higher than $400,000. I believe Mr. Rozynski failed to see the document of my demand and never made an assessment of what damages should be available to me.

7.6    "apparent authority may exist in the absence of actual authority", My case is different than these cases the Court specified. The Court does not address on whether miscommunication is exist in my case or not. If miscommunication is exist in the first place, actual authority MUST be exist for best evidence. If miscommunication is exist, and apparent authority may exist in the absence of actual authority, it would potentially create a chaos in any legal action. In the other words, an attorney can misunderstand his client's demand and has apparent authority to sign up paper for his client without client's signature and make it legal. It violates the right of his client. "apparent authority may exist in the absence of actual authority" shall not be applied to my case when miscommunication is exist.

7.7    "There is simply no evidence plaintiff did anything to make defendant doubt Mr. Rozynski's authority". I am profoundly deaf, cannot definitely hear what Mr. Rozynski have spoken to the defendants and all people communicated as if I live alone in silent world while they are living in another sound world. I have no reason to object him and/or take anything to make defendant doubt Mr. Rozynski's authority as long as Mr. Rozynski understood my settlement demand first because he knows ASL. If I were not deaf, I would easily identify what my attorney speak to anyone and anyone communicate each other when I hear, and able to take anything

to make defendant doubt my attorney's authority when I identify something was wrong. In different view, if all people including defendant are deaf except a hearing Plaintiff who does not know ASL in a meeting, all deaf people communicated each other in ASL, the hearing person would do nothing, it will get worst when an interpreter left in middle of meeting. That situation is similar to me. The Court should consider deaf's situation when anyone communicated in verbal language.

7.8     The defendant's counsel should be able to doubt Mr. Rozynski's authority when a professional ASL interpreter left in the middle of mediation session as the defendant is professional in applicable laws regarding to certified interpreter. I believe the defendant did not check Mr. Rozynski if he has a certification of ASL interpreter before Mr. Rozynski can communicate effectively with me, and facilitated communication effectively between the mediator and me after the MOU was reached out without professional ASL interpreter. I did not realize a miscommunication was exist there until after one month I received settlement agreement. The mediator misunderstood my settlement demand because of Mr. Rozynski's mistranslation due to ineffective communication.

8.     <u>Binding Effect of the MOU Without a More Formal Agreement</u>

The Court should first look at my case and make determine if miscommunication is exist in my case or not. If miscommunication is identified exist due to very similar sign language for thousand and million when actual authority is not exist, and the defendant failed to doubt Mr. Rozynski's authority for effective communication without certified ASL interpreter, then the binding effect of the MOU shall be void.

9.    Plaintiff's Alleged Failure to Read the MOU

"Plaintiff's alleged failure to read the MOU at the end of the mediation session, even if true, is no basis for invalidating that agreement." I failed to read the MOU, did not mean that I automatically authorized Mr. Rozynski to sign off it for me. Even Mr.Rozynski did not specify the amount of settlement in the MOU to me clearly. "It is basic contract law that one cannot nullify a contract based on one's own failure to read it". It is not clear to me on whether the same person sign off the contract after failure to read it. If a person failure to read it and have sign off the contract. The contract, of course, cannot be nullified in standard law. I am familiar with that basic contract law in my life. However, my case is different than that situation. I failure to read the MOU because I was very hungry, did not have energy that affect ability of reading skills, thought that Mr. Rozynski would need his co-counsel and my approval in writing when the MOU could be finalized after mediation. Moreover, Mr. Rozynski stated that I have "signed off" the MOU in his email which meant he admit that I was supposed to sign off the MOU. But I did not In fact. Basically, I failure to read it without my signature, the contract could not be valid..

**CONCLUSION**

10.    Defendant's motion to enforce the Memorandum of Understanding, dated April 9, 2014 shall be denied.

Dated: October 31, 2014

James Wang

# EXHIBIT A

"number" ASL American Sign Language

Not recommended: "1X"



The numbers, 200, 300, 400, and 500 can use EITHER the bent fingers method or the "C" handshape method of showing the concept of "hundred." Note:  600 through 900 use the "C" version only, but realistically the handshape ends up looking somewhat like a "claw" (a loose "C.")  I think the point is that on 600 - 900 you have to change the first handshape into either a "C" or a "loose C" -- you can't just bend the fingers on those. )

200:



300



400:



ScreenHunter_08 Oct. 26 20.26.png   10/26   20:26   JAMESWANG_PC   James   ScreenHunter
click to enlarge          click to enlarge          click to enlarge

## One Thousand (1,000)

Begin by forming the right hand into signed number 1 with the hand in a fist and the index finger pointed straight up. Hold the left hand at chest level with the palm facing up and the fingers held together. Then fold the thumb of the right hand onto to palm of the hand and bend the fingers down. Tap the fingertips of the right hand onto the palm of the left hand.

To form the signs for the other thousands (2,000; 3,000; 4,000; 5,000; 6,000; 7,000; 8,000; 9,000), also form the sign for the initial number followed by the tap on the left palm.



one thousand

click to enlarge          click to enlarge          click to enlarge

## One Million (1,000,000)

Begin by forming the right hand into signed number 1 with the hand in a fist and the index finger pointed straight up. Hold the left hand at chest level with the palm facing up and the fingers held together. Then fold the thumb of the right hand onto to palm of the hand and bend the fingers down. Tap the fingertips of the right hand onto the palm of the left hand twice.



one million

click to enlarge          click to enlarge          click to enlarge          click to enlarge

## Printable Downloads

The accompanying printable vocabulary sheet of numbers in American Sign Language is available for download ⬈ at ASL Higher Numbers Vocabulary Sheet and the accompanying printable flashcards at Sign Language Flashcards:

## BEFORE I WON SUMMARY JUDGMENT





# AFTER I WON SUMMARY JUDGMENT AND BEFORE MEDIATION SESSION



# DURING THE MEDIATION SESSION

# EXHIBIT B

Print                                                                                  Close

---

From: **Ziyin Wang** (ziyinwang@hotmail.com)
Sent:  Fri 10/24/14 4:50 PM
To:    jxw1775@hotmail.com (jxw1775@hotmail.com)

---

From: ziyinwang@hotmail.com
To: jxw1775@hotmail.com
Subject: RE: The Country - Diamond Bar mansions
Date: Thu, 17 Apr 2014 06:56:17 +0000

Hi, James. Yes, that is what I told you by wechat.
Have not received your flight schedule yet.

Mike

---

From: jxw1775@hotmail.com
To: ziyinwang@hotmail.com
Subject: RE: The Country - Diamond Bar mansions
Date: Thu, 17 Apr 2014 00:57:42 -0400

I thought you might be interested in the earthquake information below link

http://www.quake.ca.gov/gmaps/FAM/faultactivitymap.html

---

From: ziyinwang@hotmail.com
To: jxw1775@hotmail.com
Subject: FW: The Country - Diamond Bar mansions
Date: Mon, 14 Apr 2014 21:29:37 +0000

Dear Jian,

This is Mike Wang, Xiaobo's friend at LA.
I found a gorgeous mansion for you, please check it
with two compared properties in the attached link.
2869 Oak Knoll DR, Diamond Bar 91765
It presents 7 bedrooms, 9 bathrooms, private tennis course, pmountain view, pool, mini golf, over
30000SQF flat lot, the best public schools and 24 hours guards, and very convenient to several
golf courses, LAX and Chinese commercial centers.

Click the following link to view the Listings:
http://www.mrmlsmatrix.com/DE.asp?ID=28687966149

Please feel free to let me know your feedback to the mansion.
Mike Wang
RE Investor/Realtor
626-2151248
ziyinwang@hotmail.com

Print                                                                                                    Close

From: **Ziyin Wang** (ziyinwang@hotmail.com)
Sent:  Fri 10/24/14 4:49 PM
To:    jxw1775@hotmail.com (jxw1775@hotmail.com)

From: ziyinwang@hotmail.com
To: jxw1775@hotmail.com
Subject: FW: The Country - Diamond Bar mansions
Date: Mon, 14 Apr 2014 21:29:37 +0000

Dear Jian,

This is Mike Wang, Xiaobo's friend at LA.
I found a gorgeous mansion for you, please check it
with two compared properties in the attached link.
2869 Oak Knoll DR, Diamond Bar 91765
It presents 7 bedrooms, 9 bathrooms, private tennis course, pmountain view, pool, mini golf, over
30000SQF flat lot, the best public schools and 24 hours guards, and very convenient to several
golf courses, LAX and Chinese commercial centers.

Click the following link to view the Listings:
http://www.mrmlsmatrix.com/DE.asp?ID=28687966149

Please feel free to let me know your feedback to the mansion.
Mike Wang
RE Investor/Realtor
626-2151248
ziyinwang@hotmail.com

# EXHIBIT C

Print                                                                                       Close

# James Wang

From: jbernstein@levydavis.com
Sent: Fri 11/04/11 5:57 PM
To: Andrew Miller (AMiller@simonandeisenberg.com), ebaum@simonandeisenberg.com
Cc: jxw1773@hotmail.com

Yes, I raised it. Defendant rejected it out of hand.
Sent from my Verizon Wireless BlackBerry

From: Andrew Miller (AMiller@simonandeisenberg.com)
Sent: Fri 11/04/11 5:28 PM
To: 'Jonathan A. Bernstein' (jbernstein@levydavis.com); ebaum@simonandeisenberg.com
Cc: jxw1773@hotmail.com

Thanks. Was reinstatement raised in the mediation?

Andrew Miller, Esq.
Simon, Eisenberg & Baum, LLP
24 Union Square East, Fifth Floor
New York, NY 10003
(212) 353-8700 (Telephone)
(212) 353-1708 (Facsimile)

CONFIDENTIALITY NOTE: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call Simon, Eisenberg, and Baum at 1 (212) 353-8700 and destroy the original message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From: Jonathan A. Bernstein (jbernstein@levydavis.com)
Sent: Fri 11/04/11 5:22 PM
To: 'Andrew Miller' (AMiller@simonandeisenberg.com), ebaum@simonandeisenberg.com
Cc: jxw1773@hotmail.com

1 attachment
Consent to change attorney.PDF (42.3 KB)

It was a mediation. Under a standing administrative order in the Southern District, all employment discrimination cases are referred to mediation (pre-discovery, which I think is a terrible idea, but there's nothing to be done about it).

Please be aware that you are now bound by the mediation confidentiality agreement. That said, what happened is this: IBM offered $13,000. (I believe that there is some flexibility in that number, but they regard this as a low-value case.) Jim did not reduce his $200,000 demand (back pay from the time of termination).

I had persuaded IBM's attorneys to provide copies of all the performance reviews of the persons in his group who were not laid off in January-February 2009. We reviewed them at the mediation. The client regards this as inadequate, as I'm sure he discussed with you. He wants the backup documents supporting the L, M and H ratings referenced in IBM's position statement to the NYS Division of Human Rights.

The mediation was unproductive. Most of the time was spent in caucus. In any event, the court will not learn anything about the mediation except that the case did not settle. (You have seen my 10/31/11 status report to the court.)

The executed change of attorney form is attached. Please file it ECF with your notice of appearance. The Local Rules say that I need to be relieved, even though the client has discharged me, so I will inquire with the court on Monday about what I need to do.

Let me know if I can give you any more information.

Jonathan Bernstein

---

From: Andrew Miller (AMiller@simonandeisenberg.com)
Sent: Fri 11/04/11 4:38 PM
To: 'Jonathan A.Bernstein'; ebaum@simonandeisenberg.com
Cc: jxw1775@hotmail.com

We understand that an initial settlement conference was held, can you fill us in on what transpired there?

Andrew Miller, Esq.
Simon, Eisenberg & Baum, LLP
24 Union Square East, Fifth Floor
New York, NY 10003
(212) 353-8700 (Telephone)
(212) 353-1708 (Facsimile)

---

CONFIDENTIALITY NOTE: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call Simon, Eisenberg, and Baum at 1 (212) 353-8700 and destroy the original message and all copies.



USPS TRACKING #

9114 9011 8986 6161 5899 35

UNITED STATES
POSTAL SERVICE®

Label 400  Jan. 2013
7690-16-000-7848

JAMES WANG
14 ROY LANE
HIGHLAND, NY 12528

TO:

HONORABLE VINCENT L. BRICCETTI

UNITED STATES DISTRICT JUDGE

UNITED STATES COURTHOUSE

300 QUARROPAS STREET, ROOM 630

WHITE PLAINS, NY 10601-4150

U.S. POSTAGE
HIGHLAND, NY
NOV 01, 14
AMOUNT
$3.73
00231.21-02

